**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

FILED
___ O'clock &
JUL 3 1 2007
United States Bankruptcy Court
Columbia, South Carolina (6)

| | |
|---|---|
| IN RE: | C/A No. 06-00228-JW |
| Tubular Technologies, LLC, | Chapter 11 |
| Debtor(s). | ORDER |

This matter comes before the Court on the Trustee's: (1) Application for Authority to Appoint Lewis & Babcock, LLP as Special Counsel Pursuant to 11 U.S.C. § 327(e) ("Application") and (2) Motion to Pay the Necessary Expenses of Litigation as they are Incurred ("Motion").[1] T&B Tube, Inc., a holder of an allowed administrative priority claim, filed an objection to the Trustee's Motion. Advance Financial Corporation and GrandSouth Bank, unsecured creditors of Debtor, each filed a response in support of the Trustee's Motion. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

The Trustee seeks to employ the law firm of Lewis & Babcock, LLP ("Special Counsel"), pursuant to 11 U.S.C. § 327(e), for the purpose of filing a legal malpractice action against Debtor's former bankruptcy counsel, Todd Boudreaux and Tucker S. Player and/or their respective law firms (the "Malpractice Action"). Section 327(e) permits the Trustee to employ an attorney for a specified special purpose, with the court's approval, if the employment in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

---

[1] By order entered April 4, 2007, Marty P. Ouzts was appointed as the Liquidating Trustee ("Trustee") for Debtor's bankruptcy estate. Debtor's confirmed plan provides that Mr. Ouzts will be appointed as the Trustee for the purpose of winding up the affairs of the estate including the settlement of accounts, collection of assets, adjustment of claims, and payment of debts. Although the Motion is styled as Debtor's Motion, the Trustee is the party who is requesting the relief set forth in the Motion.

ENTERED
JUL 3 1 2007
J.G.S.

No party has objected to the Application. Based on the affidavits and testimony presented, it appears that Special Counsel does not represent or hold an interest adverse to Debtor and that the employment of Special Counsel would be in the best interest of the estate.

The Trustee further requests permission to advance up to $50,000 of the necessary costs of the Malpractice Action to Special Counsel. While the Trustee characterizes this as a request to incur debt under 11 U.S.C. § 364(c)(1), the Court believes this characterization is misplaced. Because the Trustee is requesting permission to use funds from the estate to pay its Special Counsel's expenses, the Court believes the request is more appropriately analyzed under 11 U.S.C. § 363, which governs the use of estate property by the trustee other than in the ordinary course of business. See 11 U.S.C. § 363(b)(1). Section 363(b)(1) provides that "the trustee, after notice and a hearing, may use ..., other than in the ordinary course of business, property of the estate." For the Court to approve the Motion, it must determine that a good business reason exists to use the estate's funds to pay Special Counsel's expenses. See In re Enron Corp., 335 B.R. 22, 28 (Bankr. S.D. N.Y. 2005); In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983). In making its determination, the Court must consider all of the facts and circumstances and "act to further the diverse interests of the debtor, creditors and equity holders." Enron, 335 B.R. at 28 (quoting Lionel, 722 F.2d at 1071).

It appears from the record in the case that the Trustee holds approximately $166,000.00 in funds as property of the estate. These funds were acquired as a result of the Trustee's prosecution of preferential transfer adversary proceedings and the settlement of adversary proceedings against two of Debtor's former insiders for the recovery of transfers pursuant to 11 U.S.C. §§ 549, 548, and 547. Beyond these funds, the sole remaining asset of the estate appears to be the Malpractice Action. The Trustee projects that there is approximately $350,000.00 in

2

administrative priority claims,[2] indicating that it is currently unlikely that there would be funds for distribution to general unsecured creditors. The Trustee asserts that pursuing the Malpractice Action is in the best interest of the estate because it is a means of obtaining further funds to pay all administrative claims in full and create funds for distribution to the general unsecured creditors of the estate. The Trustee presented the testimony of Lewis Babcock, attorney with the law firm of Lewis & Babcock, LLP, in support of its motion. Lewis & Babcock, LLP is well known for its attorneys' expertise in professional malpractice cases. Mr. Babcock testified that he reviews many cases of alleged malpractice, rejects most of them and accepts only a few, some on an hourly basis. However, he stated that he believes that the Trustee has a reasonable chance of being successful in the Malpractice Action, which is manifested by his firm's decision to undertake the case on a contingency basis. Mr. Babcock testified that the $50,000.00 in expenses is necessary to hire legal and financial experts and to obtain affidavits from these experts, which must be obtained prior to filing the complaint according to S.C. Code Ann. § 15-36-100 (2005 & Supp. 2006).

T&B Tube, Inc. ("T&B"), a holder of an administrative priority claim, objects to the expenditure of such a large sum and categorizes the litigation as "highly speculative." T&B argues that the amount of damages recoverable from the proposed defendants of the Malpractice Action will be difficult to prove and the defendants are not known to be insured. Finally, T&B claims that as a business entity, it is in serious need of the funds and will suffer harm if the distribution of the funds of the estate is further delayed while waiting for the resolution of the Malpractice Action.

---

[2] By Consent Order dated April 3, 2007, the Court ordered that T&B Tube, Inc. has an allowed administrative priority claim in the amount of $169,630.81. Debtor's counsel asserts that the firm of Robinson, McCarthy, Callaway and Johnson holds an administrative claim of approximately $150,000.00, which has not yet been allowed by order of this Court.

T&B's concerns are understandable as there is a risk that the Malpractice Action will yield no recovery.[3] Nevertheless, the Trustee has a fiduciary responsibility to manage and maintain the estate, keeping the interests of the creditors as his primary concern. See In re Shelton, 331 B.R. 700, 702 (Bankr. W.D. Ky. 2005)("Trustees appointed under all chapters of the Bankruptcy Code, their attorneys and other professionals, among others, are all fiduciaries to the estate, owing the duty of the utmost good faith and fair dealing to the estate and its beneficiaries."); In re Balco Equities Ltd., Inc., 323 B.R. 85, 98 (Bankr. S.D. N.Y. 2005)("As an officer of the court and as a representative of creditors, trustee has a duty to realize the maximum return for bankruptcy estate for further distribution to creditors."). If the Trustee believes it is in the best interests of the estate, the Trustee has the discretion to proceed with litigation in order to maximize recoveries for the estate.[4] In re ASI Reactivation, Inc., 934 F.2d 1315, 1323 (4th Cir. 1991). It appears from the evidence presented that the Trustee has good business reasons for pursuing the Malpractice Action. It further appears that the likelihood of a recovery outweighs the current loss to the estate, as a successful outcome of the Malpractice Action may increase the recovery to both administrative claimants and unsecured creditors. The Court finds that the use of estate funds to pursue the Malpractice Action is in the best interest of the estate and that Debtor's Motion should be granted.

For the foregoing reasons, the Court grants the Trustee's Application and Motion. To lessen the burden upon administrative claim holders caused by the delay of distribution as a

---

[3] The Court notes that, even if there was no advancement of funds, the Trustee could employ Special Counsel and other professionals, including expert witnesses, to pursue the Malpractice Action and each would likely obtain an administrative claim for expenses that would further dilute the other administrative claimants' share in the remaining estate funds.

[4] The Court notes that T&B, as an administrative claim holder, does not have an immediate right to payment of its claim. The timing of the payment of an administrative claim is within the discretion of the bankruptcy court. See In re Colortex Industries, 19 F.3d 1371, 1384 (11th Cir. 1994); In re Bookbinders' Restaurant, Inc., No. 06-12302, 2006 WL 3858020 (Bankr. E.D. Pa. Dec. 28, 2006); In re HQ Global Holdings, Inc., 282 B.R. 169, 173 (Bankr. D. Del. 2002).

4

result of the Malpractice Action, the Court would consider by separate order authorizing the Trustee to make $100,000.00 of its estate funds available for immediate distribution to allowed administrative claim holders.[5]

**AND IT IS SO ORDERED.**

_____
UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
July 31, 2007

---

[5] Any interim disbursement is subject to Trustee's right to recover any distribution in excess of the amount that such creditor would be entitled to receive under Debtor's chapter 11 plan following the marshaling of all assets.

5